[No. B027573. Second Dist., Div. Seven. Mar. 10, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
LAZARO SIMON, Defendant and Appellant.

**COUNSEL**

Dennis A. Fischer, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Mark Alan Hart and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

WOODS (N. F.), J.—Appellant was convicted of assault with a firearm (Pen. Code, §§ 245, subd. (a),[1] 12022.5), possession of a machine gun (§ 12220), and possession of a silencer (§ 12520). Following denial of his motion for new trial sentence was imposed for these offenses and for separate convictions (Super. Ct. L.A. County, No. A756542) of possession of cocaine for sale (Welf. & Inst. Code, § 11351), and possession of a machine gun (§ 12220). Appellant contends the convictions must be reversed, the court erred in denying his motion for new trial, and the court erred in imposing sentence. We reverse the judgment of conviction, find no error in the denial of motion for new trial but remand for resentencing.

### PROCEDURAL & FACTUAL BACKGROUND

Following various motions (§§ 995, 1538.5, and a motion to sever) appellant was tried by a jury for the murder of Jose Luis Ramirez, also known as Isaac Gonzales (§ 187) by use of a machine gun (§§ 12022.5 and 1203.06, subd. (a)(1)), assault with a deadly weapon, a machine gun, upon Eddie Bryant Hempen (§§ 245, subd. (a) and 12022.5), possession of a machine gun (§ 12220), and possession of a silencer (§ 12520). He was found not guilty of murder and guilty of the other charges.

We summarize the evidence,[2] including that of the murder, pertinent to appellant's contentions.

Jose Ramirez and Eddie Hempen both worked for appellant at the El Grande Market in Los Angeles. On Sunday April 15, 1984, around 10:15 a.m., Mr. Ramirez was at home with his mother when the telephone rang. His mother answered it, recognized appellant's voice, and noticed that he seemed angry. When her son finished talking to appellant he seemed upset. A short time later he left the house.

Later that Sunday, around 7:30 p.m., Jesus Gongora, a friend of Mr. Ramirez who had also worked at the El Grande Market, talked to him at the Gongora house. Mr. Ramirez said he would return for dinner and bring Mr. Gongora's past wages, $180. He did not return.

The next morning, Monday, April 16 a gardener working at the Inglewood Park Cemetery saw what he thought was a bundle of trash.

---

[1] Unless otherwise noted all statutory references are to the Penal Code.
[2] There is no insufficiency-of-evidence claim.

Later that evening, around 7:30 p.m., at the intersection of Atkinson and Chanera, in front of appellant's house in Inglewood, appellant was observed arguing with a woman. Two street lights brightly lit the area and when a car approached appellant reached into the white Toyota he was standing by, got an automatic weapon (the machine gun), and pointed it at the car. The car stopped, reversed, and left.

A neighbor heard a gunshot, went outside and saw appellant with a gun in one hand and a rifle or shotgun case in the other. Appellant gave the gun case to the woman who took it into the house where she and appellant lived.

After a few minutes the neighbor went inside and then heard a second gunshot. This time he went to his dark bedroom, looked out the window, and saw appellant getting a shorter man (Eddie Hempen) out of the white Toyota.

With appellant holding a gun and Hempen in front, they walked to the back of the car. Hempen said "I'm telling the truth, I swear to God, I'm telling the truth." Appellant then hit Hempen with the gun on the upper right side of the head. Appellant "walked" Hempen to the sidewalk, headed south on Atkinson, passed appellant's house, turned around, and returned to appellant's house. Appellant kneeled on his lawn and told Hempen to "walk straight to that car, I mean straight." Hempen started walking to the car when "officers with the lights shining" arrived.

Appellant jumped up and ran toward the back of his house.

Inglewood police officers observed Hempen to be bleeding from his left cheek and from the top of his head. They saw the driver's window of the white Toyota completely broken with glass on the street. On the front passenger floorboard of the Toyota were two 9-millimeter shell casings and in the gutter on the passenger side of the car was a leather glove with three fingers filled with lead.

The officers searched around appellant's house, knocked on appellant's door getting no response, and were unable to locate appellant.

A little after 8 p.m., about two and one-half blocks away, a Mr. Hill was returning home through an alley when he saw his garage lights go on and off. He called the police. Around 8:20 the officers knocked on the garage door, identified themselves and ordered whoever was in the garage to come out with his hands up.

No one came out. After about two or three minutes the officers opened the door, shined their flashlight inside, and soon saw appellant emerge from

underneath several boxes and debris where it looked like he had been hiding.

Appellant was totally drenched in perspiration, both his shirt and pants. It appeared that he had been running for some distance. He said "Please take me, take me, they're after me, I'm tired of running." Appellant was asked if he was running from the area of Atkinson and he said yes. In his pockets were two fully loaded magazine clips for an automatic weapon.

Also in a pocket, removed during appellant's booking, was a wallet. It contained the California driver's license, social security card, Los Angeles Police Department jail booking receipt, and other papers of Isaac Gonzales, also known as Jose Ramirez.

The next morning, Tuesday, April 17 around 8 a.m. appellant's next door neighbor was in his backyard, separated from appellant's by a six-foot block wall made higher by a sheet of corrugated plastic, where he discovered an automatic rifle, inserted clip, and attached silencer. It was laying on the ground by the wall. Near it was a piece of corrugated plastic broken from the wall top.

That same Tuesday, April 17, appellant, with three other people, loaded up two trucks and moved out of his house "real fast."

A few days later, on April 23d, Inglewood Police Detective Price went to the Inglewood Park Cemetery to investigate the increasingly pungent "bundle of trash." He saw a body in a fetal position tightly wrapped in a sheet with blood stains and five bullet holes.

After the coroner removed the body Detective Price found four expended shell casings under where the body's head had been, and at a later time found the fifth casing.

At the coroner's office the sheet was removed. The body was decomposed, feet tied together by a pair of Levi's, hands bound with a black belt, T-shirt pulled up over head, and otherwise naked except for one sock and a pair of boots, with a belt loosely hung around its neck. There were five bullet holes in the head. The body was identified by fingerprint as Jose Ramirez.

A firearms expert testified that the clips removed from appellant fit the automatic weapon found by appellant's neighbor and that all the recovered shell casings, including those from the white Toyota and from underneath the body of Jose Ramirez, had been fired from that automatic weapon.

CONTENTS

Appellant contends: 1. The trial court erred in refusing to consider on its merits appellant's motion for a new trial.

2. The prosecutor made improper, prejudicial statements during final argument.

3. The court erred in giving a flight instruction.

4. The court made sentencing errors.

DISCUSSION

1. *The trial court erred in refusing to consider on its merits appellant's motion for a new trial.*

Appellant filed a written motion for new trial listing two grounds: insufficiency of the evidence (§§ 1181, subd. (6) and 1181, subd. (7)) and improper closing argument by the prosecutor (§ 1181, subd. (5)).

At the hearing appellant raised a third ground, not included in his written motion, and sought to support that ground by calling as a witness Eddie Hempen, the victim of the assault. Hempen would testify, appellant represented, that appellant was not the person who assaulted him.

On appeal, appellant argues that a motion for new trial is an oral motion, not restricted to grounds that may have been listed in a written notice of motion. He further argues that there are nonstatutory grounds for such a motion. Appellant claims the trial court improperly restricted his motion to the two written grounds and also "mischaracterized" his oral nonstatutory ground. We consider these claims.

■ Appellant is correct that section 1181 does not require a motion for new trial to be written and that it may be oral. (*People* v. *Haldeen* (1968) 267 Cal.App.2d 478, 481 [73 Cal.Rptr. 102].) ■ Appellant is also correct that, despite the "in the following cases only" language of section 1181, there are certain nonstatutory grounds for a new trial motion. (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 583 [189 Cal.Rptr. 855, 659 P.2d 1144]; *People* v. *Oliver* (1975) 46 Cal.App.3d 747 [120 Cal.Rptr. 368]; *People* v. *Davis* (1973) 31 Cal.App.3d 106 [106 Cal.Rptr. 897].)

■ But appellant is mistaken that the trial court "mischaracterized" the nonstatutory ground for his new trial motion and restricted his presentation of it.

The trial court neither characterized nor "mischaracterized" the ground. It was appellant who characterized the ground and specified the purpose for calling his witness, as "newly discovered evidence." Only thereafter, and quite properly, did the court inquire about appellant's reasonable diligence.[3] The court accepted appellant's representations concerning Hempen's testimony and impliedly found that due diligence was absent.

Moreover, contrary to appellant's position on appeal, the relevance of Hempen's offered testimony was not to prove the innocence of appellant (and thus be the basis for a nonstatutory new trial ground) but the bad faith of the prosecutor in his closing argument. As appellant argued to the trial court:

". . . he [Hempen] was not afraid of Mr. Simon [appellant].

"And I wanted to bring that to the Court's attention, and that goes to the issue of the prosecution's bad faith in making the argument that we've raised here which is:

"Mr. Hempen didn't want anything to do with testifying against him, never has, never will. Wherever he is, if he's alive, I have no idea.

"That's an argument made by Mr. Davidson [the prosecutor]. This is at volume 30, page 145.

"And this goes to the issue, really, of the misconduct and the inappropriateness of Mr. Davidson's closing argument."

After the court ruled that "the testimony of Mr. Hempen will not shed light on any of the areas delineated in the motion for new trial."[4] appellant resumed arguing the two grounds of his motion for new trial.

We find that the trial court acted within its broad discretion (*People* v. *Robarge* (1953) 41 Cal.2d 628, 633 [262 P.2d 14]) in denying appellant's motion for new trial.

---

[3] Section 1181, subdivision (8) provides in part: "When new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial."

[4] The trial court was familiar with Mr. Hempen notwithstanding that he neither testified at the trial nor at the new trial hearing. As the court stated, counsel had advised the court "that Mr. Hempen did tell different stories and that there were times when he said that he was— that Mr. Simon was not the individual who attacked him that night? That's not new to the court. I heard that before." The court also knew the prosecutor had Mr. Hempen's tape-recorded identification of appellant as his assailant, an identification heard by three witnesses.

2. *The prosecutor made improper, prejudicial statements during final argument.*

██ Appellant cites five specific and six unspecific[5] instances of improper prosecutor closing argument. On only three occasions did appellant object and then without specificity, merely stating "objection your honor," or "that's entirely improper" or "I'm going to raise an objection again to that."

Failure to timely and specifically object is deemed a waiver (Evid. Code, § 353)[6] which precludes raising the alleged misconduct on appeal. (*People* v. *Walker* (1988) 47 Cal.3d 605, 644 [253 Cal.Rptr. 863, 765 P.2d 70]; *People* v. *Green* (1980) 27 Cal.3d 1, 27 [164 Cal.Rptr. 1, 609 P.2d 468].) Since all the cited instances, except one, were either proper argument or marginally improper and readily curable by judicial admonition, appellant is not excused from timely, specifically objecting and requesting a curative admonition. (27 Cal.3d at p. 34.) On the single occasion when the prosecutor approached *Griffin*[7] error the court immediately admonished the prosecutor who desisted.

Further, we note, that on the morning following the prosecutor's argument one of appellant's two trial attorneys requested the court, as part of its jury instructions, to admonish "the jurors again that what counsel says in argument is not evidence." No other admonition was requested. The court promised to "read it with great emphasis" and moments later did read the requested instruction. At the conclusion of the court's instructions appellant's other trial attorney stated "Your honor, you could (*sic*) instruct the jury that statements of counsel are not evidence. I didn't hear that." The court did so.

We are satisfied the jury got the message. There was no error.

---

[5] Only by page references to the reporter's transcript, with some references of eight-page length.

[6] Evidence Code section 353 provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless:

"(a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion; and

"(b) The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice."

[7] *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].

3. *The court erred in giving a flight instruction.*

■ Section 1127c[8] requires a trial court to give a flight instruction "where evidence of flight of a defendant is relied upon as tending to show guilt." CALJIC No. 2.52[9] adopts, with minor modification, the instructional language of section 1127c. The trial court gave a modified version[10] of CALJIC No. 2.52.

Appellant's objection is not to this instructional language modification, either of section 1127c or CALJIC No. 2.52, but to the essence of the instruction, viz, that the jury could consider flight in deciding guilt.

This objection is based upon the pronouncement in *People* v. *Anjell* (1979) 100 Cal.App.3d 189, 199 [160 Cal.Rptr. 669] that "[t]he fact that the perpetrators fled the scene of the crime cannot warrant an instruction on flight where identity is a contested issue."[11] The court's reasoning is this: "Flight is relevant because it is a factor 'tending to connect an accused with the commission of an offense' (*People* v. *Moore* (1963) 211 Cal.App.2d 585, 600 [27 Cal.Rptr. 526]). The fact that a robber fled the scene is of no assistance to a jury where the defendant does not dispute that all elements of the crime were present but denies that he was the robber. This is true because the instruction becomes relevant only if the sole contested issue in the case—the defendant's identity as the robber—is assumed. Even if the robber's flight tends to show his (the robber's) guilt, this is immaterial unless the jury believes that the defendant is the robber. If such is the case,

---

[8] "In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows:

"The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine.

"No further instruction on the subject of flight need be given."

[9] "The flight of a person immediately after the commission of a crime, or after [he] [she] is accused of a crime, is not sufficient in itself to establish [his] [her] guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of [his] [her] guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine." (5th ed. 1988.)

[10] "The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. Whether or not evidence of flight shows a consciousness of guilt, and the significance to be attached to such a circumstance, are matters for your determination."

[11] See also *People* v. *Guillebeau* (1980) 107 Cal.App.3d 531, 546 [166 Cal.Rptr. 45]; *People* v. *Salazar* (1980) 108 Cal.App.3d 992, 998 [167 Cal.Rptr. 38]; *People* v. *Malgren* (1983) 139 Cal.App.3d 234, 242 [188 Cal.Rptr. 569]; *People* v. *Parrish* (1986) 185 Cal.App.3d 942, 948 [230 Cal.Rptr. 118]; *People* v. *Jackson* (1986) 187 Cal.App.3d 499, 511 [231 Cal.Rptr. 889]; *People* v. *Mask* (1986) 188 Cal.App.3d 450, 456 [233 Cal.Rptr. 181].

there is no need to 'connect' him with the crime any further." (*Id.,* at pp. 199-200.)

Recent Court of Appeal opinions have found this reasoning unpersuasive and the pronouncement overbroad dictum. (*People* v. *Cowger* (1988) 202 Cal.App.3d 1066, 1076 [249 Cal.Rptr. 240]; *People* v. *London* (1989) 206 Cal.App.3d 896 [254 Cal.Rptr. 59]; *People* v. *Martinez* (1989) 207 Cal.App.3d 1204 [255 Cal.Rptr. 691].) We share this view.

The instant facts illustrate the unsoundness of *Anjell*'s dictum and reasoning. Appellant did not contest that a murder,[12] felony assault upon Eddie Hempen, possession of a machine gun, and possession of a silencer were committed by someone. He merely denied being that someone. Identity, thus, was not only a contested issue it was, for practical purposes, the only contested issue. *Anjell* would for that reason forbid a flight instruction.

Yet neither *Anjell* nor appellant suggest that flight *evidence*—even when identity is the only issue—is not properly admitted. Here such evidence was of two sorts. First was the eyewitness evidence which both described the assault of Hempen and the flight of his assaulter. As to *this* evidence *Anjell* does apply and its restriction, had there been no other flight evidence, is appropriate. That witnesses who identified appellant as the assaulter also testified that the assaulter fled, did not strengthen their identification. The *assaulter* fled. If appellant was the assaulter then it was appellant who the eyewitnesses saw flee. If appellant was not the assaulter then it was not appellant who the eyewitnesses saw flee. Flight by the assaulter, as observed by the eyewitnesses, however replete with or devoid of consciousness of guilt,[13] was identification neutral.

The second sort of flight evidence was not identification neutral. It was appellant, without dispute, who was found hiding in a stranger's garage two and one-half blocks from the assault scene some 20 minutes after the assault. He was drenched with perspiration and admitted he had run from Atkinson, the assault location. The next morning he—again there was no issue of identification—moved out of his rented house.

As to this second sort of flight evidence, both the running from Atkinson, hiding in the garage, and moving from his home, the *Anjell* prohibition is unsound. (Cf. *People* v. *Moringlane* (1982) 127 Cal.App.3d 811, 822 [179 Cal.Rptr. 726].) That appellant engaged in this activity is certain; as to this

---

[12] Although appellant was found not guilty of murder the instructions, of course, addressed that charge.

[13] It is consciousness of guilt which makes flight relevant. This concept was included in the trial court's flight instruction. (*Ante,* fn. 10.)

activity identity was not at issue. Since this activity may be interpreted as demonstrating a consciousness of guilt it is evidence relevant to identifying appellant as the perpetrator of the charged crimes. Precisely because identity (of the perpetrator of the charged crimes) was in issue, this flight evidence (where the identity of the fleer was not in issue or at least not congruent with the flight from the scene evidence) was admissible and properly considered by the jury. The court's instruction merely guided that consideration. The guidelines rather than prejudicing appellant were protective of him.

The jury was instructed such evidence was not alone sufficient to establish guilt, and only *if* proved could be considered by them, and even then the significance was for them to determine. (*Ante,* fn. 10.)

We hold that the trial court properly gave a flight instruction.[14]

4. *The court made sentencing errors.*

■ In imposing the upper four-year term for the assault with a deadly weapon conviction the court erroneously included as aggravating factors appellant's having been sentenced to state prison (he had not been) and the dangerousness of the weapon, a prohibited dual use (§ 1170, subd. (b) and Cal. Rules of Court, rule 441(c).) However, the court made clear it considered all aggravating factors, among which the probation report listed the great threat of violence posed by appellant's conduct, appellant had engaged in a pattern of violent conduct, and appellant's prior convictions were numerous and of increasing seriousness. We find the court's error harmless. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

■ In imposing the upper term for possession of a machine gun (§ 12220) and for possession of a silencer (§ 12520), the court failed to set forth its reasons (§ 1170, subd. (b); Cal. Rules of Court, rule 443). We find this error prejudicial (*People* v. *Brandt* (1987) 191 Cal.App.3d 143 [236 Cal.Rptr. 258].)

■ Contrary to appellant's contention we find no violation of section 654. Separate punishment may be imposed for each of these convictions since there is substantial evidence of possession antecedent to the assault. (Cf. *People* v. *Hopkins* (1985) 167 Cal.App.3d 110 [212 Cal.Rptr. 888].)

The court also imposed sentence in Superior Court No. A75642 but as appears from the probation and sentence hearing transcript, failed to read

---

[14] We note that "[a]lthough the *Anjell* dictum is frequently repeated, we have not found a reported opinion which relies upon it to reverse a conviction." (*People* v. *London, supra,* 206 Cal.App.3d 896, 905.)

that probation report and thus failed to "make a statement that it has considered such report." (§ 1203, subd. (b).) This error also requires resentencing.

## DISPOSITION

The judgment is reversed and the case remanded for the limited purpose of resentencing appellant consistent with the views we here express.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied April 4, 1989.