Filed 7/26/21  P. v. Sandoval CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VICTOR SANDOVAL,<br><br>    Defendant and Appellant. | D077538<br><br><br><br><br><br>(Super. Ct. No. SCN403638) |

APPEAL from a judgment of the Superior Court of San Diego County, Brad A. Weinreb, Judge.  Affirmed and remanded with directions.

Russell S. Babcock, under appointment by the Court of Appeal, for the Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Steve Oetting and Heather Bushman Arambarri, Deputy Attorneys General, for the Plaintiff and Respondent.

A jury convicted Victor Sandoval of arson.  (Pen. Code,[1] § 451.)  The court sentenced him to three years' probation and ordered him to pay certain

---

[1]    Undesignated statutory references are to the Penal Code.

fines, fees and assessments, starting one year after sentencing at $35 per month.

Sandoval contends: (1) insufficient evidence supported his arson conviction; (2) his counsel provided ineffective assistance by failing to object to certain testimony; (3) the court erroneously failed to order a mental competency examination under section 1368 despite signs that he was mentally ill; (4) the court erroneously instructed the jury with CALCRIM No. 372 regarding flight; and (5) the court erroneously imposed the fines, fees and assessments without determining his ability to pay them, in violation of his constitutional rights and under *People v. Duenas* (2019) 30 Cal.App.5th 1157. We affirm the judgment and remand with directions set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2019, a woman saw Sandoval carrying "an armful of branches" near a wooded area. She watched him for approximately five minutes as he added leaves from one pile of branches to another. She saw smoke and flames rise from one pile. She called 911.

Another passerby noticed smoke rising from some nearby trees and saw Sandoval moving away from the area. The man videotaped Sandoval, and asked if he had started the fire. Sandoval denied doing so. Afterwards, Sandoval walked away and "was being casual like nothing happened." The man called 911. He also extinguished the fire. The video recording was played for the jury.

An Oceanside Police Department arson detective who investigated the fire described the surrounding area as "about a ten-acre preserve area where there's just nothing built on it. In close proximity, you have a lot of homes. On any given corner, you have multifamily homes, single-family homes. Very dry wooded area. A lot of under—undergrowth that's dead, easily

2

combustible, and it could easily be set on fire."  The detective testified that a charred tree trunk indicated this incident involved not "just the smoldering fire.  It was a fire that was burning quite well."

*The Defense Case*

At trial, Sandoval was asked if he "intentionally" started the fire, and he replied, "Yeah," explaining that his "goal was to smell that church-type of smell" by putting eucalyptus branches on the fire to "get an incense effect." Sandoval testified:  "I was careful because I was thinking to myself that I could have burned acres, create damage or—so I clean around the—around the tree like eight-feet [*sic*] radius, and then I started a fire."  Defense counsel asked Sandoval, "Why did you select to start [the fire] next to a tree?"  He replied, "Because that tree would help me to avoid the—the wind, because I checked the direction of the wind and the wind was heading—it was blowing towards east, and then the tree was—was blocking me from the fire to spread."  He added, "And so I was kind of supervising the fire."  Sandoval testified he extinguished the fire by stepping on it.  But he acknowledged the fire was still smoking when he walked away:  "I just put it out and then I walked away.  And then when I walked away, I saw this man videotaping . . . me and asking me:  [']Did you start a fire?[']  And I said [']no,['] because there was no more fire."  Sandoval said he did not have to answer the man, who was not an "officer or anything like that."

In closing, defense counsel argued Sandoval was not guilty of arson but rather of the lesser included offense of unlawfully starting a fire:  "[Sandoval] told the officer that he set the fire to smell eucalyptus because that has a spiritual effect on him.  And Mr. Sandoval did so recklessly.  He did not do it with a malicious intent.  He did not do it with a wrongful intent.  When he set that pile of brush on fire to smell the eucalyptus, he got his spiritual effect,

3

and then he believed he put out the fire and he walked away."  Defense counsel added:  "Even though [Sandoval] cleared that area, he ignored the risk because he went ahead and he started the fire.  And ignoring the risk is a gross deviation from what a reasonable person would do."

## DISCUSSION

### I.  *Sufficiency of the Evidence Challenge*

Sandoval contends insufficient evidence supported his arson conviction: "The crux of the issue in this case is that while [Sandoval] did intend to burn eucalyptus leaves, there is no evidence that he intended the fire to spread out to burn forest land or woods.  . . .  [H]ere, there is a complete absence of malice because the uncontroverted evidence is that [he] only attempted to burn eucalyptus leaves, attempting to extinguish them after his ceremony, and he did not intentionally do damage to the woodlands."  He further requests that this court "consider exercising its discretion" and reduce his conviction to the lesser included offense of unlawfully causing a fire to forest land.  (§ 452.)

### A.  *Applicable Law*

" 'In reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]' [Citation.]  ' "[O]ur role on appeal is a limited one." [Citation.]  Under the substantial evidence rule, we must presume in support of the judgment the existence of every fact that the trier of fact could reasonably have deduced from the evidence.  [Citation.]  Thus, if the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably

4

be reconciled with a contrary finding does not warrant reversal of the judgment.' " (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.)

"A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned . . . any structure, forest land, or property." (§ 451.) Arson requires only a general criminal intent; "the specific intent to set fire to or burn or cause to be burned the relevant structure or forest land is not an element of arson." (*People v. Atkins* (2001) 25 Cal.4th 76, 84.) Thus, there must be a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property. (*In re V.V., supra,* 51 Cal.4th at p. 1029.) In the context of arson, the definition of "maliciously" does not require a "specific intent to do a further act or achieve a future consequence." (*Id.* at p. 1027.) Rather, "arson's 'willful and malice requirement ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire.' " (*Id.* at p. 1029.) "[M]alice will be presumed or implied from the deliberate and intentional ignition or act of setting a fire without a legal justification, excuse, or claim of right."[2] (*Id.* at p. 1028.)

---

[2] The court instructed the jury on arson with CALCRIM No. 1515: "To prove that the defendant is guilty of this crime, the People must prove that: 1. The defendant set fire to or burned forest land; [¶] AND [¶] 2. He acted willfully and maliciously. [¶] To *set fire to or burn* means to damage or destroy with fire either all or part of something, no matter how small the part. [¶] Someone commits an act *willfully* when he or she does it willingly or on purpose. [¶] Someone acts *maliciously* when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to defraud, annoy, or injure someone else. [¶] *Forest land* means brush-covered land, cut-over land, forest, grasslands, or woods."

B. *Analysis*

As set forth above, substantial evidence showed that Sandoval intentionally started the fire. He testified to doing so. Further, a witness saw him adding leaves to a fire. Another witness videotaped Sandoval as he was leaving the area, and captured his denial that he had started the fire. The detective testified the fire was burning "quite well," and posed a threat to the neighborhood. Based on this evidence and the court's instructions, the jury could reasonably conclude that the malice element was met here because Sandoval did not ignite the fire accidentally or unintentionally. (*In re V.V. supra,* 51 Cal.4th at p. 1029.) His claim that he did not intend to set the woodlands on fire is unavailing, as arson does not require the specific intent "to do a further act or to achieve a future consequence." (*People v. Booker* (2011) 51 Cal.4th 141, 177.)

For the same reason, we decline Sandoval's invitation to reduce his conviction to the lesser included offense.[3] The jury evaluated the evidence and court instructions and declined to find that he acted merely recklessly and unintentionally when he set the fire and walked away while it was still smoking. (Accord, *In re V.V., supra,* 51 Cal.4th at pp. 1032-1033; *People v.*

---

[3]    The court instructed the jury with CALCRIM No. 1532 about the crime of unlawfully causing a fire under section 452: "A person acts recklessly when (1) he or she is aware that his or her actions present a substantial and unjustifiable risk of causing a fire, (2) he or she ignores that risk, and (3) ignoring the risk is a gross deviation from what a reasonable person would have done in the same situation. [¶] To *set fire to or burn* means to damage or destroy with fire either all or part of something, no matter how small the part. [¶] *Forest land* means brush-covered land, cut-over land, forest, grasslands, or woods. [¶] *Property* means personal property or land other than forest land. [¶] Arson and unlawfully causing a fire require different mental states. For arson, a person must act willfully and maliciously. For unlawfully causing a fire, a person must act recklessly."

*Green* (1983) 146 Cal.App.3d 369, 379.) We have no basis for rejecting the jury's verdict based on the trial record.

## II. *Ineffective Assistance of Counsel Claim*

Sandoval contends he received ineffective assistance of counsel, who failed to object to the arson detective's testimony regarding a whiskey can that appeared like a Molotov cocktail and was found near the fire.

### A. *Background*

On direct examination, the detective testified regarding the can that "there was some stuffing material that was sticking out of [the can] as if it was being turned into maybe a makeshift Molotov cocktail." He described such an item as "some combustible material fluid that's placed in some type of container with a fuse attached to it that . . . you could light the fuse and, when you throw the bottle or container, the material or the fluids, combustible material could be gas. It could be just about anything that is on fire. When it hits, it sprays around and starts a quick fire."

On cross-examination, defense counsel asked the detective about the can:

"[Defense Counsel:] And you described a whiskey container that was empty; is that correct?

"[The Detective:] Yes.

"[Defense Counsel:] And as far as you know, that whiskey container was not used to start the particular fire that is being discussed today; is that correct?

"[The Detective:] As far as I know, it had no use in the fire."

### B. *Applicable Law*

To prove counsel provided ineffective assistance, a defendant must show both that counsel's performance fell below an objective standard of

7

reasonableness under prevailing professional norms, and the deficient performance prejudiced him. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Id.* at p. 689.) We accord great deference to counsel's tactical decisions. (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.)

"Defendant must also show that if counsel's performance fell below acceptable standards in some respect, a reasonable probability exists that a more favorable outcome would have been reached absent the deficient performance. [Citation.] That probability must be one sufficient to undermine confidence in the outcome of the trial." (*People v. Karis* (1988) 46 Cal.3d 612, 656.) In considering a claim of ineffective assistance of counsel, it is not necessary to determine " 'whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' " (*In re Fields* (1990) 51 Cal.3d 1063, 1079, quoting *Strickland, supra,* 466 U.S. at p. 697.)

C. *Analysis*

We dispose of this argument on the ground that Sandoval has failed to show prejudice. Defense counsel on cross-examination specifically raised the issue of the whiskey can and the detective confirmed that it was not used to start the fire. With that strategy, defense counsel highlighted for the jury that the reference to Molotov cocktails was immaterial to the facts of this case. Therefore, counsel blunted any prejudice that the Molotov cocktail reference might have presented. In light of the ample evidence set forth above that Sandoval started the fire intentionally, he has not shown that he would have received a different result absent the detective's challenged testimony; therefore, this claim fails.

III. *Mental Competency Hearing*

Sandoval contends the trial court violated his state and federal constitutional rights to due process and a fair trial by failing to sua sponte order a mental competency hearing under section 1368 despite the fact he showed "strong signs during the trial that [he] was suffering from a mental disease or impairment that would have made it impossible for him to assist in his defense." He alternatively contends his counsel provided ineffective assistance by failing to request a mental competency hearing.

A. *Background*

Sandoval bases his claims on two statements he made during his testimony: First, he said: "I started [the fire] in order for me to show people how to bring the Holy Spirit down, you know, trying to burn—make fire and suffocate it with green eucalyptus and make the neighborhood smell like— holy smokes, you know, like it has an effect on me that creates a—makes me believe that Holy Spirit comes down to us and helps us out."

Second, Sandoval said he used eucalyptus leaves because "[t]hat's how you—how you get the smell on—out of—smells like church, cause you've got—you got to add the green leaves of eucalyptus on top of the fire, so it'll get like oil out of those leaves and bring some like brown smoke, and that's the one that creates the odor of the Holy Spirit."

Third, Sandoval relies on his manner of greeting the judge at the March 9, 2020 sentencing hearing:  "Your Honor—a warm physical and spiritual manner, I would have burned bridges to recovery.  Anyways, I need a decision that you make in this case will be the right [*sic*]."

B.  *Applicable Law*

"[T]he conviction of an accused when he is legally incompetent violates due process."  (*People v. Medina* (1990) 51 Cal.3d 870, 881.)  "[A] competency hearing is required whenever substantial evidence of the accused's incompetence has been introduced."  (*Id.* at p. 882.)  "A defendant is mentally incompetent . . . if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."  (§ 1367, subd. (a).)  "It shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent."  (§ 1369, subd. (f).)

"When . . . a competency hearing has already been held and the defendant was found to be competent to stand trial, a trial court is not required to conduct a second competency hearing unless 'it "is presented with a substantial change of circumstances or with new evidence" ' that gives rise to a 'serious doubt' about the validity of the competency finding."  (*People v. Marshall* (1997) 15 Cal.4th 1, 33.)  "More is required than just bizarre actions or statements by the defendant to raise a doubt of competency."  (*Ibid.*)  "[A]

10

reviewing court generally gives great deference to a trial court's decision whether to hold a competency hearing." (*Ibid.*) " ' "An appellate court is in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper." ' " (*Ibid.*)

If a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt on the record and inquire of defense counsel whether counsel believes the defendant is mentally competent. (§ 1368, subd. (a).) " 'Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations.' " (*People v. Murdoch* (2011) 194 Cal.App.4th 230, 236; see *People v. Rogers* (2006) 39 Cal.4th 826, 847.) But to be entitled to a competency hearing, a defendant must exhibit more than a preexisting psychiatric condition that has little bearing on the question of whether the defendant can assist defense counsel. (*In re Sims* (2018) 27 Cal.App.5th 195, 208.)

A defense counsel's failure to move for a competency hearing may violate the defendant's right to effective assistance "when 'there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered.' " (*Stanley v. Cullen* (9th Cir. 2011) 633 F.3d 852, 862.) However, an attorney "is not ineffective for failing to raise the issue of competence where there may be some evidence raising a doubt, but that evidence is not substantial." (*People v. Mickel* (2016) 2 Cal.5th 181, 200.) C. *Analysis*

11

Contrary to Sandoval's argument, his challenged statements made during the trial regarding the Holy Spirit and his wish to elicit the smell of church do not provide substantial evidence of his mental incompetency. Although bizarre or seemingly irrelevant comments may indicate some form of mental illness, they do not necessarily indicate incompetency for trial purposes. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1064.) "Bizarre statements or actions, taken in isolation, do not require a court to hold a competency hearing." (*In re Sims, supra,* 27 Cal.App.5th at p. 209.) Sandoval's statements did not alert the court about a possible need for a mental competency examination. Sandoval has pointed to nothing in the record indicating that he was unable to understand the proceedings against him or assist in his defense.

Further, as shown by defense counsel's closing arguments, she did not regard Sandoval's trial statements as signs of mental illness; rather, she used them to support her argument that Sandoval set the leaves on fire for its "spiritual effect," and not out of malice, and thus the jury should not find him guilty of arson, but only of the lesser included offense. This was a tactical defense that was incompatible with a request for a section 1368 hearing. Accordingly, we conclude Sandoval has "failed to show affirmative evidence that counsel could have had 'no rational tactical purpose' for these decisions, [thus he] has not demonstrated constitutionally deficient performance on this record." (*Mickel, supra*, 2 Cal.5th at pp. 198, 200.)

IV. *Flight Instruction*

Sandoval contends the trial court erred by instructing the jury regarding flight with CALCRIM No. 372 because there was insufficient evidence that he actually fled or otherwise sought to avoid arrest or prosecution.

12

A. *Background*

The court instructed the jury regarding flight with CALCRIM No. 372: "If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he was aware of his guilt. [¶] If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

B. *Applicable Law*

The trial court has a sua sponte duty to instruct the jury on all general principles of law relevant to the issues raised by the evidence. (*People v. Brooks* (2017) 3 Cal.5th 1, 73.) The trial court is not required, however, to give the jury a pinpoint instruction if it is argumentative, duplicative of other instructions, or is not supported by substantial evidence. (*People v. Hartsch* (2010) 49 Cal.4th 472, 500.)

"A claim of instructional error is reviewed de novo. [Citation.] An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law. [Citation.] In reviewing a claim of instructional error, the court must consider whether there is a reasonable likelihood that the trial court's instructions caused the jury to misapply the law in violation of the Constitution. [Citations.] The challenged instruction is viewed 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' " (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) Instructional error requires reversal of the judgment only if it resulted in a miscarriage of justice, meaning it is reasonably probable the defendant would have fared better in the absence of the error. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *People v. Watson*

13

(1956) 46 Cal.2d 818, 836; see *People v. Cavitt* (2004) 33 Cal.4th 187, 209 [erroneous limiting instruction subject to *Watson* harmless error analysis].)

For the court to give an instruction regarding flight as evincing consciousness of guilt, there need only be some evidence in the record that, if believed by the jury, would sufficiently support the suggested inference. (*People v. Coffman & Marlow* (2004) 34 Cal. 4th 1, 102.) Flight does not require an actual escape or the physical act of running from the scene as long as the defendant acts with the purpose of avoiding observation or arrest. (*People v. Abilez* (2007) 41 Cal.4th 472, 522; *People v. Bradford* (1997) 14 Cal.4th 1005, 1055.) Moving after committing a crime can support a flight instruction. (*People v. Simon* (1989) 208 Cal.App.3d 841, 851-852)

C. *Analysis*

Sandoval claims it is unclear whether defense counsel properly objected to the flight instruction in the trial court. The People counter that defense counsel did not object to that instruction. We need not resolve this issue because the claim fails on the merits. Sufficient evidence of flight was presented by a witness who saw Sandoval walking away from the fire while it was still burning. When the witness asked Sandoval if he had started the fire, he denied doing so. The witness proceeded to extinguish the fire. Sandoval admitted that he walked away from the fire while it was still smoking. By leaving the scene while the fire burned, and later denying his role in starting the fire, Sandoval evinced consciousness of guilt that supported the flight instruction.

In any event, we conclude that any error was harmless. CALCRIM No. 372 expressly informed the jury that, if it found Sandoval fled or tried to flee the scene, it was the sole judge of "the meaning and importance" of that conduct. And the trial court properly instructed the jury with CALCRIM No.

14

200 that some jury instructions might be inapplicable. In other words, as the jury was told to decide for itself what facts supported flight, and if it decided the evidence that Sandoval walked away from the fire was irrelevant, it knew to disregard the flight instruction. (See *People v. Silveria* (2020) 10 Cal.5th 195, 245 [reviewing court must presume jury understood and followed instructions].) With CALCRIM No. 200, the trial court mitigated the potential for prejudice even if the court erroneously gave the flight instruction. (*People v. Vega* (2015) 236 Cal.App.4th 484, 503.) In light of the overwhelming evidence of Sandoval's guilt set forth above, we conclude it was not reasonably probable he would have received a more favorable result absent the flight instruction.

## V. *Fines, Fees and Assessments*

Sandoval contends this court should vacate the fines, fees and assessments because they violate his constitutional rights to due process and equal protection and against excessive fines and contradict *Duenas, supra,* 30 Cal.App.5th 1157.

At the April 2020 sentencing hearing, the court imposed the following fines, fees and assessments: (1) $820 state surcharge fine (§ 1465.7, subd. (a)); (2) $300 restitution fine (§ 1202.4, subd. (b)); (3) $154 criminal justice administration assessment (Gov. Code, § 29550.2); (4) $40 court operations assessment (§ 1465.8); (5) $30 criminal conviction assessment (Gov. Code, § 70373); (6) suspended $300 probation revocation fine (§ 1202.44); and (7) $500 in direct restitution fines to the victims (§ 1202.4, subd. (f)(3)(G)).

When defense counsel requested the court stay the fines, fees and assessments pending an ability to pay hearing, the court ordered Sandoval to start payments of $35 monthly on May 9, 2020, with this proviso: "If [Sandoval] has an inability to pay, is not employed and . . . has made gainful

15

opportunities to be employed and does not have the ability, he can come back to court and seek resolution of that issue at that time."

In light of the fact the court expressly stayed its ruling on the fines, fees and assessments for one year, which time expired during the pendency of this appeal, we need not address this claim on the merits.  Rather, we permit Sandoval on remand to file a proper motion in the trial court to address his inability to pay the fines, fees and assessments as that court's ruling allowed.

## DISPOSITION

The judgment is affirmed and the matter remanded with directions that the superior court permit Sandoval to file a motion challenging his ability to pay the imposed fines, fees and assessments.


O'ROURKE, J.


WE CONCUR:



HUFFMAN, Acting P. J.



GUERRERO, J.