[Nos. F005340, F005474. Fifth Dist. Sept. 22, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK STEVEN PARRISH, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I through VI.

## COUNSEL

Robert A. Vittoria, under appointment by the Court of Appeal, and Mark Steven Parrish, in pro. per., for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Joel Carey and Ralph S. Blascovich, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BALLANTYNE, J.—**

### INTRODUCTION

Defendant, Mark Steven Parrish, was charged by information with one count of burglary and one count of receiving stolen property. It was further alleged that he suffered a prior conviction.

Defendant admitted his prior conviction before trial. During trial defense counsel sought to exclude defendant's prior conviction for involuntary man-

slaughter. The motion was denied. The court included in its instructions CALJIC No. 2.52, flight as evidence of a consciousness of guilt.

Defendant was found guilty of burglary and sentenced to prison for the upper term of three years plus a one-year consecutive term for the enhancement.

## FACTS

David Moore was employed by the Kern County Parks and Recreation Department as a peace officer. On July 24, 1984, he was assigned to work at Hart Park. Moore was patrolling the park after closing hours and observed Johnny Ruffus and the defendant leaving a parked car at a fast pace. He observed a large object in the vehicle.

He stopped the two men to talk to them and called the sheriff's department for a backup unit. He talked to the two for approximately five minutes under the street lamp. The defendant looked familiar to Moore. The defendant said he was just walking through the park. While defendant and Ruffus were present, Moore walked to the car and observed a microwave oven in the back of the car. The oven was very familiar to him because he had used it in the ranger station to heat up his coffee only 45 minutes before. During their conversation the defendant left twice and returned when Moore summoned him; however, the third time defendant ran from the scene and was not apprehended.

After defendant fled and Ruffus was arrested, Moore also saw a pair of bolt cutters in the car which belonged to the County of Kern. Moore returned to the ranger station and discovered the microwave oven was missing. The back door was unlocked and open one inch but there were no signs of a forced entry or other disturbance. Moore had locked all the doors when he went out to patrol the park.

Ruffus told Moore that the person who was with him was Tony Marshall. The park had an employee named Tony Morrison.

The owner of the car which held the microwave oven was Johnetta O'Neal, Ruffus's girlfriend. She was questioned by Moore. O'Neal stated that on the evening of July 24 a man named Mark Parrish approached her and asked if Ruffus was home. Moore put the name together with the fact that he had seen Mark Parrish (the defendant) working at Hart Park.

On July 25 or 26, Detective Drake contacted defendant at Hart Park and placed him in the back of her car. Moore was then called over and asked

to look at the defendant to see if he could identify him. Moore identified defendant as the person who fled the scene the night before.

Defendant surrendered his park keys to Detective Drake. Although the keys issued to groundskeepers normally opened only the supply rooms and the paper towel and toilet paper dispensers, defendant's keys opened the door to the ranger station.

Codefendant Ruffus testified that he did not know the defendant. He was paid by a man named Tony to drive him to the park to pick up something. Ruffus drove him to the park and parked the car. Tony got out and returned with the microwave oven, and Ruffus was helping Tony put the oven in the car when Moore drove up.

Defendant's wife testified that defendant was with her the entire evening on July 24 and she remembers the date because her daughter was ill and had to be taken to the doctor the next day. Defendant testified that he was home on July 24 and did not commit the burglary.

## DISCUSSION

### I.-VI.*

. . . . . . . . . . . . . . . . . . . . . . . .

### VII.

#### WAS IT ERROR TO GIVE THE FLIGHT INSTRUCTION (CALJIC No. 2.52) WHEN THE SUSPECT'S IDENTITY WAS A CONTESTED ISSUE?

Penal Code section 1127c provides: "In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows:

"The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine." Such an instruction was given in the instant case.

---

*See footnote on page 942, *ante*.

■ Defendant asserts that it is inappropriate to give a flight instruction when the identity of the perpetrator who fled is in question.[5]

Respondent contends that there are two lines of authority on this question. The better line of decisions holds that evidence of flight is proper even when the defense has raised an identity issue. Even if error, respondent asserts that it was harmless.

The court in *People* v. *Anjell* (1979) 100 Cal.App.3d 189 [160 Cal.Rptr. 669] at pages 199-200 held: "The fact that the perpetrators fled the scene of the crime cannot warrant an instruction on flight where identity is a contested issue. Flight is relevant because it is a factor 'tending to connect an accused with the commission of an offense.' (*People* v. *Moore* (1963) 211 Cal.App.2d 585, 600 . . . .) The fact that a robber fled the scene is of no assistance to a jury where the defendant does not dispute that all elements of the crime were present but denies that he was the robber. This is true because the instruction becomes relevant only if the sole contested issue in the case—the defendant's identity as the robber—is assumed. Even if the robber's flight tends to show his (the robber's) guilt, this is immaterial unless the jury believes that the defendant is the robber. If such is the case, there is no need to 'connect' him with the crime any further." *Anjell* has been followed in *People* v. *Salazar* (1980) 108 Cal.App.3d 992 [167 Cal.Rptr. 38], *People* v. *Moringlane* (1982) 127 Cal.App.3d 811, 821-822 [179 Cal.Rptr. 726], and *People* v. *Malgren* (1983) 139 Cal.App.3d 234 [188 Cal.Rptr. 569].

Respondent relies on a line of cases as disagreeing with the *Anjell* position.

In *People* v. *Caudillo* (1980) 101 Cal.App.3d 122 [161 Cal.Rptr. 293], the defendant was tried for the robbery of a store. The identity of the perpetrator was in issue and the flight instruction was given. The defendant was seen exiting the store and running down the street and around the corner. On appeal defendant argued that "every patron of a liquor store eventually leaves it and the fact he was arrested two weeks after the crime and in another county was *no basis* for a finding of flight or for an inference of consciousness of guilt." (*Id.,* at pp. 124-125, italics added.) This court found that defendant's running from the store and around the corner was evidence of flight sufficient to warrant the giving of the instruction. We found the case virtually identical to *People* v. *Vasquez* (1979) 94 Cal.App.3d 42 [156 Cal.Rptr. 235]. (*Caudillo, supra,* at p. 125.)

---

[5]Defendant cites to the case of *People* v. *Newman* (Cal.App.) in his brief. This case has been depublished.

In *People* v. *Vasquez, supra,* 94 Cal.App.3d 42, defendant robbed a market. He was seen running from the store by two witnesses who recognized him from high school. Identity was in issue and defendant presented an alibi defense. (*Id.,* at p. 44.) The jury was given a flight instruction. (*Id.,* at p. 45.) Defendant objected to the flight instruction. The appellate court held that the two witnesses' observations of defendant running from the store clearly showed flight. Thus, the instruction was properly given. (*Ibid.*) In reaching this decision the court in *Vasquez* relied upon *People* v. *Johnson* (1969) 271 Cal.App.2d 616 [76 Cal.Rptr. 768] and *People* v. *Hill* (1967) 67 Cal.2d 105 [60 Cal.Rptr. 234, 429 P.2d 586].

In *People* v. *Johnson, supra,* 271 Cal.App.2d 616, officers were alerted to a possible burglary. When they arrived defendant was coming out of the front door of a house. When confronted, defendant retreated back into the house. He then exited the back of the house and was apprehended after hurdling the fence. (*Id.,* at p. 623.) Defendant objected to the giving of the flight instruction. The court held the instruction was properly given because it was possible to infer flight from this evidence. (*Ibid.*)

In *People* v. *Hill, supra,* 67 Cal.2d 105, an officer heard the sounds of breaking glass. He then saw the defendant run out of a shop and around the corner. The officer pursued him and saw defendant get in a car and drive away. The officer gave chase and stopped the defendant. The jury was instructed on the flight of the defendant. (*Id.,* at pp. 112-113.) The defendant asserted that the instruction was incorrect because it invited the jury to consider flight as showing consciousness of guilt rather than informing the jury that it could consider flight in determining guilt. The court held it was not improper to inform the jury of the reason why it is asked to consider defendant's flight. (*Id.,* at p. 120.)

All of the above cases, as well as the others cited by respondent, discussed the propriety of giving the flight instruction on a basis different than the identity of the defendant theory set forth in *Anjell*. In *Caudillo, Vasquez* and *Johnson,* the court was concerned with whether there was substantial evidence of flight to warrant the giving of the instruction. Such a determination must be made before the flight instruction can be given. Although these cases have been repeatedly cited for the proposition that a flight instruction is proper when identity is in issue, this is not the basis upon which they were decided and they do not support such a proposition. "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered." (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].) Respondent's reliance

on these cases as authority contradicting the *Anjell* rationale is therefore misplaced.

In the instant case there was absolutely no dispute that the person with Ruffus fled the scene on the night of July 24. Flight was not disputed. Also undisputed by either defendant or respondent was the fact that whoever was with Ruffus broke into the ranger's station and stole the microwave oven. The sole contention made by the defendant was that he was not the perpetrator. Thus, the question left for the jury to decide was whether the defendant was the perpetrator of the crime. Once the jury found the defendant was the perpetrator, the case against him ended for all practical purposes. The only factual issue was the identity of the perpetrator who fled the scene. The flight instruction added nothing to this determination. Giving CALJIC No. 2.52 could have misled the jury in a close case. The court erred in the instant case by giving the flight instruction. For the combination of reasons set forth in the conclusion, however, this is not a close case. Any error committed by giving the instruction is therefore harmless.

### Conclusion

The crime of burglary clearly occurred. The only question was the identity of the perpetrator. Moore positively identified the defendant at trial as the man he saw on July 24, 1984. Moore had five minutes to observe the defendant at arm's length in a well-lit area. Moore was trained in making identifications. At the time Moore was observing the defendant, he thought he looked familiar. When Johnetta O'Neal told Moore the name of Mark Parrish, he recalled why the defendant was familiar, which was because he had seen him in the Hart Park office area. Moreover, defendant unexplicably had a key which opened the ranger station, which was consistent with the method used by the perpetrator of the burglary. Finally, defendant was seen earlier in the evening asking for Ruffus.

In light of this compelling evidence, we cannot say that absent the errors it is reasonably probable a result more favorable to the defendant would have been reached by the jury. (*People* v. *Watson, supra,* 46 Cal.2d 818, 837.)

The judgment is affirmed.

Franson, Acting P. J., and Woolpert, J., concurred.

A petition for a rehearing was denied October 16, 1986, and appellant's petition for review by the Supreme Court was denied December 17, 1986.