Filed 2/3/16  P. v. Newsome CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KEVIN DEVON NEWSOME,<br><br>    Defendant and Appellant. | F067578<br><br>(Super. Ct. No. BF144039A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kari Ricci Mueller, Assistant Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In September 2012, three masked suspects entered a jewelry store in Bakersfield, California. Gunshots were exchanged with the store's owner while customers were present, but nobody was injured. The suspects fled with diamond rings. Law enforcement subsequently discovered appellant Kevin Devon Newsome's fingerprints on a glass display case in the store at a location where a suspect had touched the glass with a bare hand before firing his handgun. Appellant was arrested the day after this robbery. Following appellant's arrest, two weapons, including a stolen revolver, were discovered in the trunk of a vehicle in which appellant, a convicted felon, had been a passenger. These two weapons were not connected with the robbery.

A jury subsequently convicted appellant of the following counts associated with the robbery: attempted murder (Pen. Code, §§ 664/187, subd. (a),[1] count 1); second degree robbery (§§ 211/212.5, subd. (c); counts 2 & 3); assault with a firearm (§ 245, subd. (a)(2); counts 4-9); and unlawful possession of a firearm by a felon (§ 29800, subd. (a)(1); count 10). The jury found true the following enhancements associated with the robbery: that appellant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and personally used a firearm (§ 12022.5, subd. (a)). The jury, however, found appellant not guilty of the two counts associated with his arrest the day after the robbery: unlawful possession of a firearm by a felon (§ 29800, subd. (a)(1); count 11) and receiving stolen property (§ 496, subd. (a); count 12). Appellant was sentenced to an aggregate prison term of 54 years, and various fees and fines were imposed.

On appeal, appellant raises six issues. First, he contends the trial court abused its discretion when it refused to sever the counts associated with his arrest (11 and 12) from the remaining charges. Second, he asserts insufficient evidence supports the convictions for assault with a firearm regarding three of the customers in the store. Third, he claims

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

the trial court prejudicially erred by failing to instruct the jury on brandishing as a lesser included offense of assault with a firearm. Fourth, he argues the trial court prejudicially erred by giving the jury a flight instruction when the only issue at trial was his identity as a suspect. Fifth, he maintains the cumulative prejudicial effect of the errors in his first, third and fourth arguments deprived him of due process. Finally, based on an alleged violation of ex post facto laws, he seeks reduction of the restitution fine and corresponding parole revocation restitution fine which were imposed upon him.

Appellant's claims are without merit. We affirm.

## BACKGROUND

**I.     Trial Facts.**

**A.     Prosecution facts relating to counts 1 through 10.**

On September 13, 2012, three masked men entered the Southwest Coins & Jewelry store in Bakersfield, California. The owners, Douglas and Katharina Jarvi, were present, along with four customers. Suspect 1, later identified through fingerprint analysis as appellant, held a raised handgun. Appellant yelled for everyone to get down. Katharina testified that appellant's gun was pointed towards the back of the store and not at anything in particular. She described appellant as "tall and slim." She laid down behind a display case and she did not see anything further. She activated the store's alarm system from a panic button she carried.

Douglas testified he was aware that appellant held a gun, but believed appellant panned or waved it around without pointing it directly at anyone. As the intruders walked into the middle of the store, Douglas ran towards the back, pulling out a .22-caliber pistol from his pocket. An intruder (suspect 2) chased after Douglas, jumping over a back glass counter to reach him.[2] Appellant followed closely behind and touched

---

[2]     Appellant was tried concurrently with his codefendant, Randon McQuiller, who was also charged in counts 1 through 10. It was the prosecution's theory that McQuiller was suspect 2. The jury could not reach a unanimous agreement regarding the charges

3.

that glass counter with his bare left hand. Douglas fired a single shot at suspect 2 at close range, but the shot missed. Suspect 2 grabbed the gun from Douglas's hand, threw Douglas to the ground, and jumped back across the counter. Douglas went into a back storage area where he kept another gun, a .38-caliber revolver. He retrieved it and peeked back into the showroom. An intruder (suspect 3) was hammering at a glass case near the front door while appellant and suspect 2 stood nearby. Three customers lay on the ground while a fourth customer stood frozen near a display case away from the intruders. Near the front door, appellant raised his gun and fired twice at Douglas, who returned two shots. No one was struck. Suspect 3 broke open the case and grabbed a tray of diamond rings worth approximately $30,000. The intruders fled.

Douglas called 911. Neither Douglas nor Katharina saw any of the intruders' faces and neither could identify anyone from photographic lineups. The robbery lasted less than a minute and was recorded by the store's surveillance system, which was played for the jury. Upon viewing the video, law enforcement tested for fingerprints the area where suspect 1 had touched the glass. A useable print was located in that area, which was an exact match to appellant's left ring finger and partial left palm print. The prints were consistent with the video where suspect 1 placed his left hand on the glass countertop.

After appellant's fingerprints were discovered, law enforcement asked Douglas and Katharina if they knew why appellant's prints would be there, but they did not know. Neither Douglas nor Katharina recalled ever seeing appellant in their store before the robbery. At trial, Douglas estimated that around 50 customers entered the store on a daily basis, and he recalled that Katharina cleaned the glass cases the night before the crime. Katharina testified that she was "99 percent" certain and "pretty sure" she had

against McQuiller and a mistrial was declared as to him. The third suspect was not involved in this trial.

4.

wiped down the glass counters the night before the robbery. The prosecution's fingerprint expert noted that latent fingerprints could remain on a glass surface for many years without any cleaning.

Jonathan Villegas was in the store with his girlfriend, Michelle Mendez, and his young child, Victor Villegas. Jonathan heard a commotion from the store's door and turned to look. He saw someone pointing a gun at him, and he heard, "Get on the ground." Jonathan laid down, covering his son while Mendez laid down next to them. Jonathan was unable to identify any of the intruders.

Peggy Dodge was in the store when the robbery occurred. She remained standing during the crime, including as shots were fired. She later told a law enforcement officer that she froze during the events. The officer described Dodge's demeanor afterwards as "physically upset or shaken."

A few hours after the robbery, Bakersfield police received a 911 call from Ebone King, the girlfriend of codefendant Randon McQuiller, who also participated in the call. McQuiller reported that he had been shot during a dice game and he was driving to a particular hospital. King said he was driving a silver Buick Regal.

Police arrived at the hospital shortly thereafter but were unable to locate McQuiller. Police located and seized his silver Buick Regal, which contained his wallet. Based on surveillance video, police knew that a silver four-door vehicle was used in the robbery, but they could not determine a license plate number, or determine the year, make or model of the vehicle involved.

The morning after the robbery, police located items from the robbery in a dumpster near a Starbucks. Three black ski masks, five gloves, a white shirt with blue sleeves, dark blue pants, a black T-shirt, and the price tags from the stolen jewelry were recovered. The blue-and-white shirt still had a price tag on it, which allowed police to identify where it was purchased, which was from a clothing store directly across the street from the jewelry store. Police learned that McQuiller purchased that shirt, as well

5.

as three black ski masks, on the day of the robbery. Video recorded McQuiller in the clothing store as he made the purchases, which was played for the jury. A detective opined that the blue-and-white shirt which McQuiller purchased was the same shirt worn by suspect 2 in the video from the robbery.

### B. Facts relating to counts 11 and 12.

Appellant was arrested the day after the robbery at a convenience store in Bakersfield. He had arrived at that location as a passenger in a vehicle, riding in the back seat.[3] Appellant was with Christopher Davis, who was arrested along with appellant. After the arrests, police searched the vehicle and located two firearms hidden under the trunk liner, which were not linked to the robbery. One of the weapons, a revolver, had been stolen approximately three days before from the residence of Cecil and Rose Tackett. Surveillance video showed that appellant had accessed the trunk in the parking lot prior to his arrest.

The Tacketts testified at trial regarding the burglary of their home. On the morning of their burglary, Rose was working at her place of business, which is located close to her home, and she saw three men walking down an alley towards her residence. The three individuals were of three different sizes, with one being "really tall" and "pencil skinny." About thirty minutes later, she saw the three men returning in the alley carrying items, including a box that she recognized from her home. She went home a short time later and confirmed that her home had been burglarized. Law enforcement subsequently showed photographic lineups of potential suspects to both of them, but neither Cecil nor Rose were able to identify anyone. In court, neither Cecil nor Rose were able to identify either appellant or McQuiller as individuals who may have been involved in the burglary of their home.

---

**3** At the preliminary hearing, a law enforcement officer had opined that appellant drove this vehicle based on a review of surveillance video.

Approximately two weeks after the jewelry store robbery, police searched Davis's house. The search was prompted by a recorded jail call between appellant and an unknown female, who referred to "something" being found at "somebody's" house. Appellant responded that it did not matter because his stuff was at "Chris mama house." The search of Davis's home yielded nothing of significance.

## C. Defense evidence.

Appellant rested following the prosecution's case. McQuiller provided a defense and testified on his own behalf. He explained that he purchased the ski masks and shirt at the request of a friend, known to him as Mississippi, on the day of the robbery while Mississippi waited outside the clothing store. McQuiller said Mississippi wanted "beanies" but Mississippi said he was okay with the ski masks as a substitute. McQuiller and Mississippi parted ways, and Mississippi took the shirt and ski masks. McQuiller went to several smoke shops and the mall, and then eventually to the hospital. He said he was high that day, and he could not recall why he drove to the hospital. McQuiller denied knowing appellant, but admitted knowing Davis and spending time with Davis's brother. The prosecutor confronted McQuiller with telephone records indicating that McQuiller was in phone contact with Davis's brother just after McQuiller purchased the ski masks. McQuiller said he could not recall whether he contacted Davis's brother that day or not.

## DISCUSSION

## I. The Trial Court Did Not Abuse Its Discretion When Failing To Sever Counts 11 And 12.

Appellant argues the trial court abused its discretion in failing to sever counts 11 and 12 from the remaining charges. He contends his subsequent trial was grossly unfair and denied due process. He seeks reversal of his convictions.

7.

## A.    Background.

Prior to trial, appellant orally moved to sever counts 11 and 12 and have a bifurcated trial from the remaining charges.  Appellant argued the firearms seized during his arrest were not connected to the robbery, and evidence that he went "around with a gun in his car" was very prejudicial to the robbery charges.

The prosecutor conceded the two firearms in the vehicle's trunk were not used in the robbery, but argued appellant had access to firearms despite his status as a convicted felon, and he had the means to perpetrate the robbery.  The prosecutor noted this evidence was "pretty tame" when compared to the allegations that appellant entered a jewelry store and fired two rounds at the owner with customers present.

The court found no prejudice if the charges were heard jointly.  The court determined the allegations in the information involved the same individual and the same class of crimes.  Based on judicial economy, the trial court denied the motion to sever.

At trial, the jury was instructed pursuant to CALCRIM No. 3515 that each count charged in the case was a separate crime and each count had to be separately considered with its own verdict.

During closing arguments, the prosecutor noted that Cecil's revolver was different than the weapon used in the robbery, and appellant had access to it in the trunk before he was arrested.  The prosecutor suggested that appellant's recorded jail conversation with the unknown woman established that appellant left his belongings at Davis's mama's home, including items which the police did not recover, like the weapon used in the robbery and the stolen rings.

## B.    Standard of review.

In an appeal from the denial of severance, we consider the record that existed at the time of the ruling.  (*People v. Thomas* (2012) 53 Cal.4th 771, 798 (*Thomas*).)  We review the trial court's ruling for an abuse of discretion, which in this context means a ruling that "'"'falls outside the bounds of reason.'"'"  (*People v. Jenkins* (2000) 22

8.

Cal.4th 900, 947 (*Jenkins*).)

The appellant bears the burden of demonstrating that the trial court's ruling was an abuse of discretion, and the appellant "must make a 'clear showing of prejudice.'" (*Thomas, supra,* 53 Cal.4th at p. 798.) Even when a trial court's ruling on a motion to sever was proper at the time it was made, an appellate court must determine also whether the joinder of charges resulted in a grossly unfair trial that deprived the appellant of due process. (*People v. Soper* (2009) 45 Cal.4th 759, 783.)

**C.     Analysis.**

Appellant first argues the trial court's pretrial ruling was an abuse of discretion. He then contends that the failure to sever counts 11 and 12 resulted in a grossly unfair trial, resulting in a denial of due process.

**1.     The trial court did not abuse its discretion.**

As is relevant here, section 954 permits the joinder of two or more different offenses of the same class of crimes or offenses. (§ 954; see *People v. Soper, supra,* 45 Cal.4th at p. 771.) When confronted with a severance request, the trial court's first inquiry is whether the two offenses are "of the same class of crimes or offenses." (§ 954; see *People v. Soper, supra*, 45 Cal.4th at p. 771.) When this is satisfied, the court has authority to sever charged offenses in the interests of justice upon a showing of good cause. (§ 954.)

The following factors are used to determine if severance is required: "(1) whether the evidence relating to the various charges would be cross-admissible in separate trials, (2) whether some of the charges are unusually likely to inflame the jury against the defendant, (3) whether a weak case has been joined with a strong case or with another weak case, and (4) whether one of the charges is a capital offense or the joinder of the charges converts the matter into a capital case. [Citation.]" (*People v. Elliott* (2012) 53 Cal.4th 535, 551.) When a weak case was joined with a strong case, the issue is whether

a "spillover" effect might affect the outcome. (*People v. Valdez* (2004) 32 Cal.4th 73, 120.)

If cross-admissibility of the evidence is present, that is normally enough to justify the trial court's refusal to sever the charged offenses. (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1227.) However, our Supreme Court has held that a lack of cross-admissibility does not establish that the trial court erred. (*Ibid.*; see § 954.1 [evidence concerning one offense need not be admissible as to the other offense in order to be jointly tried].) If there is no cross-admissibility of the evidence, an appellate court evaluates the three remaining factors to determine whether the trial court abused its discretion. (*People v. Trujeque* (2015) 61 Cal.4th 227, 259; *Alcala v. Superior Court*, *supra*, 43 Cal.4th at p. 1227.)

Appellant concedes that counts 11 and 12 were of the same class of crimes or offenses as the robbery charges. However, he asserts the evidence from these counts would not have been cross-admissible if severance had occurred. He claims the robbery charges against him were relatively weak and the introduction of the evidence relating to counts 11 and 12 were both inflammatory and prejudicial. He relies on *People v. Earle* (2009) 172 Cal.App.4th 372 (*Earle*) to establish an abuse of discretion.

In *Earle, supra,* 172 Cal.App.4th 372, the trial court denied a motion to sever a misdemeanor indecent exposure charge with a felony sexual assault charge. The charges stemmed from entirely dissimilar incidents with no apparent historical connection. (*Id.* at p. 378.) On appeal, the appellate court determined that the exposure charge had a strong potential to inflame the jury against the defendant because the defendant may have been viewed as a "freak" or "'pervert.'" (*Id.* at p. 401.) The indecent exposure case was extremely strong while the evidence in the assault case was weak. (*Id.* at pp. 401-402.) The *Earle* court determined that the joint trials inflicted actual prejudice upon the defendant. (*Id.* at p. 409.) It was considerably likely that the defendant would not have been found guilty of the assault if the jury had not heard evidence of the indecent

exposure. (*Ibid.*) As a result, *Earle* reversed the judgment on the counts charging assault. (*Id.* at p. 412.)

Here, appellant devotes considerable briefing regarding how the evidence from counts 11 and 12 would not have been cross-admissible in a bifurcated trial. He also notes that the trial court did not expressly discuss the issue of cross-admissibility as part of its prejudice determination. We need not, however, analyze appellant's contention that the evidence from counts 11 and 12 was not cross-admissible because a lack of cross-admissibility, by itself, does not establish that the trial court erred. Instead, even when cross-admissibility is lacking, we examine the three remaining factors. (*Alcala v. Superior Court, supra,* 43 Cal.4th at p. 1227.)

Unlike in *Earle*, the evidence against appellant was not weak regarding his participation in the robbery. Prints from appellant's left hand were discovered at the same location where a suspect touched the glass display case during the robbery with his bare left hand. Moreover, the charges in counts 11 and 12 were not unusually likely to inflame the jury against appellant. As the prosecutor noted during the hearing, the evidence associated with counts 11 and 12 was far less troublesome than the allegations associated with the robbery. *Earle* is factually distinguishable and does not dictate reversal. Finally, none of the combined charges involved a capital offense.

This record does not establish that the trial court's decision fell outside the bounds of reason. (*Jenkins, supra,* 22 Cal.4th at p. 947.) Accordingly, appellant has failed to meet his burden of demonstrating that the trial court's pretrial ruling was an abuse of discretion.

### 2. Appellant was not denied the due process of law.

An appellate court must reverse a judgment if the defendant establishes that the joinder actually resulted in gross unfairness amounting to a denial of due process. (*People v. Mendoza* (2000) 24 Cal.4th 130, 162.) This is true even when the trial court's severance ruling was correct at the time it was made. (*Ibid.*) The appellate court looks at

the evidence actually introduced at trial to determine whether the trial was grossly unfair so as to deprive the defendant due process or a fair trial. (*People v. Bean* (1988) 46 Cal.3d 919, 940.)

Appellant notes that the trial evidence was different from the preliminary hearing, where a law enforcement officer testified appellant drove the vehicle on the day of his arrest. In contrast, law enforcement testified at trial that appellant was only a passenger. Without the severance, appellant contends the prosecutor was able to convey an improper impression that appellant was more likely the shooter in the robbery because he associates with criminals who steal firearms, he had easy access to firearms, he may have been involved in the burglary of the Tackett residence, and a connection existed between appellant, McQuiller, and Davis. He argues a real risk existed that the jury decided the robbery case not on its merits but based on the evidence linked to the unrelated firearm counts. He notes Katharina described appellant as "tall and slim" while Rose described one of the three suspects involved in the burglary of her home as "pencil skinny." He maintains that the benefits of a joint trial did not outweigh the possible "spillover" effect of this evidence on the jury. We disagree.

Appellant's prints established that he participated in the robbery. The glass cases had been cleaned before the robbery and the owners did not recognize appellant. Moreover, the jury was instructed that each count charged in the case was a separate crime. It is presumed that the jury understood and followed this instruction. (*People v. Boyette* (2002) 29 Cal.4th 381, 436 [the jury is presumed to follow the court's instructions].) The jury rejected the argument that appellant was in possession of the firearms associated with counts 11 and 12, and the jury did not convict McQuiller of any counts. This record does not demonstrate a reasonable probability that the joinder influenced the jury's guilty verdicts against appellant. Accordingly, appellant is not entitled to reversal.

**II.    Sufficient Evidence Supports The Convictions In Counts 6, 8, and 9.**

Appellant asserts that the prosecution failed to carry its burden of proof regarding the convictions for assault with a firearm relating to Douglas, Katharina, and Dodge.  He contends these counts must be reversed for insufficient evidence.

**A.    Standard of review.**

**1.    Sufficiency of the evidence.**

For an appeal challenging the sufficiency of evidence, we review the entire record in the light most favorable to the judgment to determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt based on "'evidence that is reasonable, credible, and of solid value ….'" (*People v. Jones* (2013) 57 Cal.4th 899, 960.)  In doing this review, we are not required to ask whether we believe the trial evidence established guilt beyond a reasonable doubt.  (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)  Rather, the issue is whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence favorably for the prosecution.  (*Ibid*.)  We are to presume the existence of any fact the jury could have reasonably deduced from the evidence in support of the judgment.  (*Ibid*.)

**2.    Assault.**

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.)  A violation of section 245, subdivision (a)(2), requires "an assault upon the person of another with a firearm …." Assault is a general intent crime.  (*People v. Valdez* (2002) 27 Cal.4th 778, 787.)

**B.    Analysis.**

Appellant asserts on appeal that he merely brandished his weapon in a manner to convey fear, which does not rise to the legal definition of assault with a firearm.  He argues only one of the victims, Jonathan, testified that a gun was pointed at him, which appellant concedes is "likely sufficient" to support the convictions for assault involving Jonathan, his girlfriend, and his son (counts 4, 5 and 7, respectively).  However, appellant

13.

contends there is no evidence he pointed his gun at Douglas, Katharina, or Dodge. He notes he did not shoot Dodge, although she failed to get down, and he only later shot at Douglas when Douglas aimed a weapon at him. He maintains the evidence fails to establish his intent to discharge his weapon or to commit unlawful conduct immediately leading to a battery. He relies principally on *People v. Raviart* (2001) 93 Cal.App.4th 258 (*Raviart*) and *People v. McMakin* (1857) 8 Cal. 547 (*McMakin*), and contends counts 6, 8 and 9 must be reversed.

In *Raviart, supra,* 93 Cal.App.4th 258, the defendant was convicted, among other charges, of two counts of assault with a firearm upon two police officers. (*Id.* at p. 261.) The defendant had aimed his weapon at one officer while both officers closed in and shot him. The defendant claimed insufficient evidence existed to support his conviction for assault involving the second officer because he never pointed his weapon at him, and the second officer was sheltered behind a corner when the shooting occurred. (*Id.* at pp. 262-263.)

The appellate court disagreed, noting it is not necessary to point a firearm directly at a victim to commit the crime of assault. (*Raviart, supra,* 93 Cal.App.4th at p. 263.) Based on its record, *Raviart* determined the jury could have found beyond a reasonable doubt that the defendant drew his loaded handgun with the intent to shoot both officers. (*Id.* at p. 266.) It was enough that the defendant had his gun in a position where he could have used it against the second officer if he had not been shot first. (*Ibid.*) *Raviart* disagreed with the defendant's contention that an assault does not exist unless it is "'the last proximate step'" before a completed battery is present. (*Ibid.*) *Raviart* also dismissed the defendant's argument that the second officer was sheltered because the jury could have found beyond a reasonable doubt that the defendant had the ability to shoot the second officer before he dove for cover. (*Id.* at p. 267.)

In *McMakin, supra,* 8 Cal. 547, which the *Raviart* court cited, the defendant was convicted of assault after he drew a revolver and held it in a perpendicular line with the

victim's body, but with the gun pointed downwards so that the shot would have hit the ground had the pistol been fired. The defendant had threatened to shoot the victim if he did not leave the defendant's real property. (*McMakin, supra,* at p. 547.) On appeal, the defendant argued insufficient evidence supported assault. Our Supreme Court rejected that argument because assault can occur when someone holds up a fist in a menacing manner, draws a sword or bayonet, or presents a gun at a person who was within range. (*Id.* at p. 548.) *McMakin* held that the defendant's intent was an issue for the jury to resolve, but competent evidence must exist to show an intent to commit an injury, and the defendant must act in preparation for immediate and not future harm. *McMakin* noted that assault does not occur if a defendant does not intend to use his gun except solely to intimidate. However, assault occurs when the defendant's intent is to go further, if necessary, to accomplish the purpose intended, and the defendant makes preparations, draws his weapon, and is in a position to use the weapon with effect against the victim. (*Id.* at pp. 548-549.) The Supreme Court held that the act of drawing a weapon is generally evidence of an intent to use it. (*Id.* at p. 549.) However, such evidence may be rebutted depending on the defendant's statements or other circumstances showing a lack of intent to use the weapon. *McMakin* affirmed the judgment because the defendant drew and held a weapon in a position to use while also declaring his intent to do so.

In addition to the cases which appellant cites, two additional authorities are instructive. In *People v. Escobar* (1992) 11 Cal.App.4th 502 (*Escobar*), the defendant was convicted of assault with a firearm. The defendant held a gun but concealed it from the victim by holding it inside a briefcase. The victim heard the defendant cock the weapon. (*Id.* at p. 503.) On appeal, the defendant argued there was no attempt to use the weapon to inflict injury. The defendant did not exhibit the weapon, point it, or fire it, "but merely cocked it." (*Id.* at p. 505.) The Court of Appeal determined the victim was aware the defendant was holding a gun and the defendant had a present ability to violently injure. The evidence established "something more than mere preparation."

15.

(*Ibid.*) *Escobar* noted the victim did not have to see the gun because he could rely on his sense of hearing to perceive the defendant's intent to commit a violent injury. (*Ibid.*) The evidence was sufficient to establish the defendant intended to willfully commit an act which, had it been completed, its direct and natural consequence was an injury to the victim. (*Ibid.*)

Finally, in *People v. Chance* (2008) 44 Cal.4th 1164 (*Chance*) sheriff's officers drove to the defendant's residence to arrest him pursuant to felony warrants. The defendant ran from his residence and an officer pursued him on foot, observing that the defendant was carrying a handgun. The defendant ran around the front end of a trailer and the officer approached, but anticipated an ambush. The officer advanced the other direction around the back of the trailer and, after carefully peering around the corner, he saw the defendant facing the front end of the trailer. (*Id.* at p. 1168.) The defendant was holding his gun extended forward. The officer trained his weapon on the defendant, who looked back over his shoulder at him. The officer repeatedly told the defendant to drop his weapon, and the officer testified he was in fear for his life and afraid the defendant was going to shoot him at any second. The defendant was arrested and his gun was recovered fully loaded with 15 rounds in the magazine, although the firing chamber held no round. The gun's safety mechanism was off. (*Id.* at p. 1169.) A jury convicted the defendant of assault with a firearm on a peace officer, along with other offenses. The Court of Appeal reversed the assault conviction, concluding the defendant did not have the present ability to commit a violent injury. (*Ibid.*) The Court of Appeal concluded the defendant's act of pointing his gun at a place where he expected the officer to appear "was not immediately antecedent to a battery." (*Ibid.*) The Attorney General appealed to the Supreme Court, which reversed.

The *Chance* court held assault occurs when a defendant's actions enable him to inflict a present injury. However, "[t]here is no requirement that the injury would necessarily occur as the very next step in the sequence of events, or without any delay."

16.

(*Chance, supra,* 44 Cal.4th at p. 1172.) Instead, when a defendant "equips and positions himself to carry out a battery," an assault is present "if he is capable of inflicting injury on the given occasion, even if some steps remain to be taken, and even if the victim or the surrounding circumstances thwart the infliction of injury." (*Ibid.*) "'Once a defendant has attained the means and location to strike immediately he has the "present ability to injure." The fact an intended victim takes effective steps to avoid injury has never been held to negate this "present ability."' [Citations.]" (*Id.* at p. 1174.)

Chance determined the defendant's loaded weapon and concealment behind the trailer allowed him to strike immediately at the officer. The officer's evasive maneuver did not deprive the defendant of the required "'present ability'" necessary for conviction of assault. *Chance* rejected the defendant's argument that an assault did not occur because he never pointed his weapon in the officer's direction. That "degree of immediacy" was not necessary. (*Chance, supra,* 44 Cal.4th at p. 1176.) Instead, the defendant's conduct by positioning himself to strike with a loaded weapon was sufficient to establish the actus reus required for assault. (*Ibid.*)

Here, Douglas testified he was not aware of the gun being pointed at anyone, but it was being waved or panned around. The video supports Douglas's testimony. Appellant entered the jewelry store wearing a mask and with a loaded weapon drawn and ready. He held his gun in a manner enabling him to inflict immediate injury to everyone in the store. He panned his gun generally in the direction of everyone in the store as he walked forward. After putting his bare left hand on the glass counter at the back of the store, appellant returned to the front of the store still holding his weapon. From the front of the store, appellant then fired his weapon twice in the general direction of Douglas.

Drawing and holding his loaded weapon was evidence of appellant's intent to use it. He was equipped and in a position to carry out a battery against everyone. There is no requirement that injury had to occur as the very next step in the sequence of events and aiming his weapon at any one person was a degree of immediacy not required for

conviction. Although appellant did not shoot at Dodge when she failed to get on the ground, we are not required to ask whether we believe the trial evidence established guilt beyond a reasonable doubt. (*People v. Johnson, supra,* 26 Cal.3d at p. 576.) Rather, the issue is whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence favorably for the prosecution. (*Ibid.*)

Based on this record, sufficient evidence exists to support the jury's determination appellant had the general intent to commit an assault with a deadly weapon upon Douglas, Katharina, and Dodge. This evidence was reasonable, credible, and of solid value such that a reasonable jury could find appellant guilty beyond a reasonable doubt in counts 6, 8, and 9. (*People v. Jones, supra,* 57 Cal.4th at p. 960; *People v. Johnson, supra,* 26 Cal.3d at p. 576.) Accordingly, appellant is not entitled to reversal of these counts.

## III.   The Trial Court Did Not Err In Its Failure To Instruct On Brandishing.

Appellant argues the trial court committed prejudicial error by failing to instruct the jury on brandishing his weapon as a lesser included offense of assault with a firearm. He contends his rights under the Sixth and Fourteenth Amendments were violated, and counts 4 through 9 must be reversed.

### A.   Standard of review.

"We apply the independent or de novo standard of review to the failure by the trial court to instruct on an assertedly lesser included offense." (*People v. Cole* (2004) 33 Cal.4th 1158, 1218.) In considering whether the trial court had a sua sponte duty to instruct the jury on lesser included offenses, we construe the evidence in the light most favorable to appellant. (*People v. Turk* (2008) 164 Cal.App.4th 1361, 1368, fn. 5.)

### B.   Analysis.

Appellant contends there was substantial evidence he committed the lesser offense of brandishing a firearm, and not the greater crime of assault with a firearm. Before he

fired his weapon at Douglas, which supported the attempted murder conviction, appellant notes he did not attempt to injure any of the alleged assault victims, and he did not expressly threaten to shoot anybody.[4] He concedes he issued a command while holding his weapon, but he did not fire shots when Dodge failed to comply and get down. He maintains there was eyewitness testimony from which the jury could have concluded he was "merely waving the gun" and did not point it at any victims. Although Jonathan testified he felt the gun was pointed at him, appellant asserts the jury could have disbelieved this testimony in light of other (uncited) evidence, or at least rendered a lesser verdict with regards to the other victims.

Like most jurisdictions, California recognizes that an offense may necessarily include one or more lesser offenses. (*People v. Birks* (1998) 19 Cal.4th 108, 117 (*Birks*).) The trial court has a sua sponte obligation to instruct on a lesser included offense when there is substantial evidence from which a reasonable jury could conclude the defendant committed the lesser, but not the greater, offense. (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) A lesser offense is necessarily included in a greater offense if the greater cannot be committed without also committing the lesser. (*People v. Smith* (2013) 57 Cal.4th 232, 240 (*Smith*); *Birks, supra,* 19 Cal.4th at p. 117.) We consider two issues to determine a trial court's instructional duties regarding a lesser included offense: (1) the statutory elements of the two offenses and then (2) the facts actually alleged in the accusatory pleading. (*Smith, supra,* 57 Cal.4th at pp. 240, 242.)

### 1. The statutory elements of the two offenses.

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) A violation of section 245, subdivision (a)(2), requires "an assault upon the person of another with a firearm …." In contrast, a person is guilty of brandishing a firearm when the person, "except in self-

---

[4] Douglas was a named victim of both attempted murder and assault with a firearm.

19.

defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner, or who in any manner, unlawfully uses a firearm in any fight or quarrel .…" (§ 417, subd. (a)(2).)

Starting in 1911, our intermediate courts have consistently rejected appellant's contention that brandishing is a lesser included offense of assault with a firearm. (See *People v. Steele* (2000) 83 Cal.App.4th 212, 218 (*Steele*) [citing nine appellate cases so holding].) The simple explanation is that it is possible to assault someone with a firearm without doing so in a rude, angry or threatening manner such as firing from a place of concealment or from behind the victim. (*Ibid.*) Appellant asks us to ignore this precedent because it potentially contradicts Supreme Court authority in *People v. Wilson* (1967) 66 Cal.2d 749 (*Wilson*) and *People v. Coffey* (1967) 67 Cal.2d 204 (*Coffey*), disapproved on another point in *Curl v. Superior Court* (1990) 51 Cal.3d 1292, 1304, fn. 7. We find this argument unpersuasive.

In *Wilson, supra,* 66 Cal.2d 749, the defendant was found guilty of, inter alia, two counts of murder and assault with a deadly weapon. (*Id.* at p. 752.) Without expressly holding that brandishing is a lesser included offense to assault with a deadly weapon, the Supreme Court determined the trial court prejudicially erred in failing to instruct the jury on brandishing regarding the murder counts and the count for assault with a deadly weapon. (*Id.* at pp. 757, 764.) According to the *Wilson* court, the failure to provide a brandishing instruction effectively eliminated from the jury's consideration a principal defense presented. (*Id.* at p. 757.) In reaching this conclusion, *Wilson* examined the evidence at trial and how the parties presented closing arguments. (*Id.* at pp. 757-758.)

In the same year that *Wilson* was decided, the Supreme Court in *Coffey, supra,* 67 Cal.2d 204, reviewed a case where the defendant was charged with four counts of assault with intent to commit murder and four counts of assault with a deadly weapon upon a police officer. (*Coffey, supra,* at p. 208.) In a footnote, *Coffey* cited to *Wilson, supra,* 66 Cal.2d at pp. 757-761, and observed that the jury in *Coffey* had been "properly

instructed" that brandishing was a lesser offense necessarily included in the assault charges. (*Coffey, supra,* at p. 222, fn. 21.)

In *Steele, supra,* 83 Cal.App.4th 212, the Second Appellate District issued a thoughtful opinion rejecting the same argument appellant raises here. The *Steele* court noted that *Wilson* only implied, and did not directly hold, that brandishing is a lesser included offense to assault with a firearm. (*Steele, supra,* at p. 219.) *Steele* declined to follow *Wilson*'s implied holding for several reasons. First, *Steele* reviewed and cited a discussion appearing in *People v. Escarcega* (1974) 43 Cal.App.3d 391 (*Escarcega*), which determined that *Wilson* did not hold that brandishing is a lesser included offense to assault with a firearm. (*Escarcega, supra,* at pp. 399-400.)

*Escarcega* noted the following concerns to justify its determination: (1) the rationale of the "'lesser and necessarily included offense'" was never discussed or considered in *Wilson*; (2) *Wilson* never held that the elements of section 417 were "necessarily included" in the elements for assault with a deadly weapon; (3) *Wilson* did not overrule the prior published appellate court decisions holding that brandishing was not a lesser included offense to assault with a firearm; (4) after *Wilson* was decided, the Supreme Court consistently reaffirmed the rule that a lesser and necessarily included offense is one which must be committed in order to commit the greater offense; and (5) the footnote in *Coffey, supra,* 67 Cal.2d at p. 222, was dictum and without precedential value because it was not responsive to any appellate issues raised and it was not necessary to that decision. (*Escarcega, supra,* 43 Cal.App.3d at pp. 399-400.)

After reviewing and citing *Escarcega* with approval, *Steele* also noted that the Supreme Court in *Wilson* failed to follow its own rule, i.e., "that the determination of whether an offense is lesser included is made from the language of the statute or the information, and not from the evidence adduced at trial. [Citation.]" (*Steele, supra,* 83 Cal.App.4th at p. 221.) Except for *Wilson*, that rule has continued without interruption and was affirmed by the Supreme Court in 1998 in *Birks, supra,* 19 Cal.4th at page 117.

Finally, *Steele* noted that an assault with a firearm may be committed without necessarily brandishing a weapon. (*Steele, supra,* 83 Cal.App.4th at p. 221.) Based on the foregoing reasons, *Steele* held that "brandishing cannot be a lesser included offense to assault with a firearm." (*Ibid.*)

Appellant concedes that *Wilson* did not expressly state that brandishing is a lesser included offense to assault with a firearm, but argues such a holding was suggested in *Wilson*. He contends the reference to *Wilson* only months later in *Coffey* makes that "suggestion" even stronger. He further acknowledges that *Wilson* did not disapprove of those published Court of Appeal cases holding that brandishing is not a lesser included offense to assault with a firearm, but claims *Wilson*'s failure cannot be deemed "as acquiescence" to contrary law from any intermediate appellate courts. Finally, he concedes that the footnote statement in *Coffey* is dictum but argues it should not be ignored, citing authority that Supreme Court dictum is nevertheless persuasive. (See *County of Fresno v. Superior Court* (1978) 82 Cal.App.3d 191, 194 [Supreme Court dicta "may be highly persuasive"]; *Gogri v. Jack in the Box Inc.* (2008) 166 Cal.App.4th 255, 272 [appellate courts "generally consider California Supreme Court dicta to be persuasive"].) He insists that we are bound to follow *Wilson* and *Coffey* under the rule that courts of inferior jurisdiction are required to accept the law declared by courts of higher jurisdiction. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) We disagree.

It is worth noting that the Supreme Court denied a petition for review in *Steele*, which weakens appellant's contention that *Steele* is inconsistent with *Wilson, supra,* 66 Cal.2d 749 and *Coffey, supra,* 67 Cal.2d 204. Under the statutory elements, it is possible to commit an assault with a firearm pursuant to section 245, subdivision (a)(2), without also committing the crime of brandishing pursuant to section 417. We agree with the appellate courts that brandishing a firearm is not a lesser included offense of assault with a firearm based on their respective statutory elements. (*Steele, supra,* 83 Cal.App.4th at

22.

p. 218; *People v. Lipscomb* (1993) 17 Cal.App.4th 564, 569; *People v. Beach* (1983) 147 Cal.App.3d 612, 626; *People v. Orr* (1974) 43 Cal.App.3d 666, 673; *People v. Birch* (1969) 3 Cal.App.3d 167, 176.)

### 2. The facts alleged in the accusatory pleading.

We must also consider the language of the accusatory pleading in determining whether the trial court had a duty to instruct the jury on a lesser offense. (*Smith, supra,* 57 Cal.4th at p. 242.) Here, regarding counts 4 through and including 9, the information alleged that appellant "did willfully and unlawfully commit an assault" on the respective six victims with a firearm. The language of this accusatory pleading did not implicate section 417 as it did not state that appellant drew or exhibited a gun in a rude, angry, or threatening manner, or used his gun in a fight or quarrel. (See § 417, subd. (a)(2).)

Appellant contends there was substantial evidence he committed the lesser offense of brandishing a firearm and not the greater crime of assault with a firearm. However, when determining whether a trial court must instruct on a lesser included offense, we do not examine the evidence developed at trial but look either to the statutory elements or the accusatory pleading. (*Smith, supra,* 57 Cal.4th at pp. 240, 244.) Neither the statutory elements nor the accusatory pleading establish that brandishing was a lesser included offense. Accordingly, the trial court did not err in failing to so instruct.[5]

## IV. The Court Did Not Prejudicially Err in Giving CALCRIM No. 372.

Appellant asserts the trial court prejudicially erred by instructing the jury with CALCRIM No. 372, which allowed the jury to infer guilt from his flight from the jewelry store. He seeks reversal of his convictions.

---

[5] Because the trial court did not err, we will not address appellant's alternative contentions that the trial court prejudicially violated his rights under the Sixth and Fourteenth Amendments.

### A.  Background.

Pursuant to CALCRIM No. 200, the trial court instructed the jury that some of the jury instructions may not apply, depending on how the jurors decided the facts of the case.  The court stated, "Do not assume just because I give a particular instruction that I am suggesting anything about the facts.  After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

Pursuant to CALCRIM No. 372, the trial court instructed the jury that if appellant "fled immediately after the crime was committed, that conduct may show that he [was] aware of his guilt.  If you conclude that [appellant] fled, it is up to you to decide the meaning and importance of that conduct.  However, evidence that [appellant] fled cannot prove guilt by itself."

### B.  Standard of review.

An appellate court uses an independent or de novo standard of review to determine whether jury instructions correctly state the law, or whether they removed an issue from the jury's consideration and effectively directed a finding adverse to the defendant.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)  We review a purportedly erroneous jury instruction by inquiring whether a reasonable likelihood exists the jury applied the challenged instruction in such a way as to violate the Constitution.  (*People v. Richardson* (2008) 43 Cal.4th 959, 1028.)

### C.  Analysis.

Appellant argues no evidence established he was one of the three suspects who fled the store, and he was arrested the following day without attempting to evade law enforcement.  He contends a flight instruction should not have been given because the prosecution's entire case focused on identifying him as one of the three suspects.  He acknowledges that he did not object to the flight instruction in the trial court but claims the error is nevertheless cognizable on appeal because the instruction affected his substantial rights.  (§ 1259; *People v. Dennis* (1998) 17 Cal.4th 468, 534 [even in the

absence of an objection, section 1259 permits an appellate court to review instructional error that affects substantial rights].) He contends the error was prejudicial under either the federal standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [the reviewing court must state that the error was harmless beyond a reasonable doubt] or the state standard of *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) [whether it is reasonably probable a more favorable result would have occurred in the absence of the error].

Respondent asserts this claim is forfeited on appeal. Respondent also argues this claim is without merit because appellant's identity was established and any instructional error was harmless under the state standard of *Watson, supra,* 46 Cal.2d 818.

We disagree with respondent that appellant has forfeited this issue on appeal. "Challenges to the flight instruction given pursuant to section 1127c are cognizable on appeal even in the absence of a contemporaneous objection." (*People v. Rogers* (2013) 57 Cal.4th 296, 332, fn. 5.) Accordingly, we will address this claim. However, we agree with respondent that appellant cannot establish prejudice.

"In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows: [¶] The flight of a person immediately after the commission of a crime … is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine." (§ 1127c; *People v. Rogers, supra,* 57 Cal.4th at p. 332.) Generally, a flight instruction is appropriate when a defendant departs a crime scene under circumstances where the evidence suggests that a consciousness of guilt motivated his or her movements. (*People v. Avila* (2009) 46 Cal.4th 680, 710.)

Appellant relies on *People v. Martinez* (1989) 207 Cal.App.3d 1204 (*Martinez*) and *People v. Parrish* (1986) 185 Cal.App.3d 942 (*Parrish*) as establishing a flight instruction should not have been given under the circumstances of his trial. Respondent,

however, contends that the continued validity of these authorities is questionable in light of our Supreme Court's decision in *People v. Mason* (1991) 52 Cal.3d 909 (*Mason*), which rejected the proposition that a flight instruction should never be given where identity is a contested issue. (*Id.* at p. 943.) Appellant asserts that *Mason* kept in place the requirement that there must be independent evidence identifying the defendant as the person who fled.

In *Parrish, supra,* 185 Cal.App.3d 942, this court held that a flight instruction was not proper where the defendant claimed he was not the perpetrator of a burglary and theft. The only question for the jury to decide was whether the defendant was the perpetrator who fled the crime scene. In reaching its holding, *Parrish* relied upon *People v. Anjell* (1979) 100 Cal.App.3d 189 (*Anjell*), which had noted in dictum that a flight instruction is not warranted where identity is a contested issue and the perpetrators fled the crime scene. (*Anjell, supra,* 100 Cal.App.3d at p. 199.) The *Parrish* court held that the flight instruction added nothing to the jury's determination and could have misled the jury, but it determined no error occurred as the instruction was harmless in light of the evidence against the defendant. (*Parrish, supra,* 185 Cal.App.3d at p. 948.)

Likewise, in *Martinez, supra,* 207 Cal.App.3d 1204, the appellate court held that a flight instruction was not proper where the sole issue at trial was whether the defendant was the driver who caused a hit-and-run accident. The defendant had claimed he was not the driver. *Martinez* held such an instruction added nothing to the jury's determination regarding the identity of the perpetrator, who fled the scene. (*Id.* at p. 1215.) The *Martinez* court cited *Parrish* with approval in finding instructional error. (*Martinez, supra,* at p. 1215.) *Martinez*, however, found no prejudice in light of the evidence, determining a more favorable result was not reasonably probable. (*Id.* at p. 1216.)

Our Supreme Court in *Mason, supra,* 52 Cal.3d 909, subsequently held that a flight instruction is proper even when identity is at issue. (*Id.* at p. 943.) In *Mason*, the defendant was convicted of five murders all committed on separate dates. Approximately

four weeks after one of the murders, the defendant led law enforcement on a high-speed automobile chase but eventually escaped on foot. The pursuing deputies saw the defendant's face and found a work order in his abandoned vehicle bearing his first initial and last name, along with his parents' address. (*Id.* at p. 924.) Appellant was arrested the following month. (*Id.* at p. 925.) To show consciousness of guilt, the trial court admitted evidence of the defendant's high-speed flight from law enforcement, and it instructed the jury pursuant to section 1127c. (*Id.* at p. 941.)

On appeal, the defendant claimed, inter alia, that it was error for the court to instruct the jury on his flight because his identity as the murderer was a contested issue following his presentation of alibis for three of the killings. (*Mason, supra,* 52 Cal.3d at pp. 942-943.) The Supreme Court rejected that argument, holding it is proper to instruct a jury on flight pursuant to section 1127c if there is evidence identifying the defendant as the person who fled so long as that evidence was relied upon as tending to show guilt. (*Mason, supra,* at p. 943.) *Mason* stated that a jury is entitled to know that it may infer consciousness of guilt from flight but that flight, by itself, was not sufficient to establish guilt. The jury's need for such an instruction does not change just because the defendant's identity is also an issue. To the contrary, the jury must first logically decide whether the person who fled was the defendant and, if so, how much weight to give the flight in resolving the other issues bearing on guilt. (*Ibid.*) In a footnote, the Supreme Court expressly disapproved *Anjell, supra,* 100 Cal.App.3d 189 "and its progeny" to the extent those cases are inconsistent with the views expressed in its opinion. (*Mason, supra,* 52 Cal.3d at p. 943, fn. 13.) Subsequent to *Mason,* the Supreme Court has reaffirmed the rule that a flight instruction is appropriate even when the defendant's identity is disputed so long as there is substantial evidence of the defendant's flight apart from his identification as the perpetrator. (See *People v. Avila, supra,* 46 Cal.4th at p. 710; *People v. Rogers* (2009) 46 Cal.4th 1136, 1170-1171, fn. 19; *People v. Turner*

(1994) 8 Cal.4th 137, 201; *People v. Roberts* (1992) 2 Cal.4th 271, 310; *People v. Pensinger* (1991) 52 Cal.3d 1210, 1245.)

Here, the jury had to decide whether it was appellant who participated in the robbery. The surveillance video shows suspect 1 touching a glass display case with his bare left hand. Appellant's finger and partial palm print, from his left hand, were subsequently identified at that location on the glass case. The owners testified that the glass cases were cleaned the night before this crime. This evidence tended to identify appellant as the person who participated in the robbery and fled. Under a broad reading of *Mason*, this establishes that the flight instruction was not in error. (*Mason, supra,* 52 Cal.3d at p. 943.)

The parties dispute whether *Mason* applies to the facts of this case. We are cognizant that the facts here are distinguishable from those in *Mason*, where the defendant's flight occurred separate and apart from the commission of the crimes. We need not resolve the parties' dispute, however, because even if *Mason* does not control the present situation and instructional error occurred, appellant cannot establish prejudice.

The jury was instructed to first determine the facts of the case and then apply the correct jury instructions to those facts. The jury was also instructed to determine if it was appellant who fled, and, if so, to determine the significance of the flight. The jury was cautioned that evidence of flight cannot prove guilt by itself. The jury is presumed to have followed the court's instructions. (*People v. Boyette, supra,* 29 Cal.4th at p. 436.)

The instruction regarding flight would have been ignored had the jury determined appellant was not involved in the robbery. Moreover, once the jury determined appellant was involved in the robbery, his subsequent flight from the store was of little or no importance in establishing his guilt under the facts of this case. Based on this record, any error in the giving of CALCRIM No. 372 was harmless beyond a reasonable doubt. Accordingly, appellant is not entitled to reversal.

28.

## V. No Cumulative Error Exists.

Appellant alleges he suffered a due process violation from cumulative errors. He focuses on the joinder of counts identified in section I, along with the jury instructions discussed in sections III and IV, above. He asserts that these errors cumulatively resulted in a constitutionally unfair trial, requiring reversal of all counts.

This contention is without merit because we have rejected all of his claims. Accordingly, reversal is not warranted. (*People v. Bradford* (1997) 14 Cal.4th 1005, 1057 [the defendant's cumulative prejudice argument rejected based on findings each individual contention lacked merit or did not result in prejudice].)

## VI. The Restitution Fine And Parole Revocation Restitution Fine Do Not Violate Appellant's Ex Post Facto Rights.

Appellant asserts the trial court violated his ex post facto rights when it imposed a restitution fine and a parole revocation restitution fine.

### A. Background.

The incident which resulted in appellant's convictions occurred in 2012. Sentencing occurred in June 2013. As part of his sentence, appellant was ordered to pay a $280 restitution fine (§ 1202.4, subd. (b)) and a $280 suspended parole revocation restitution fine (§ 1202.45).

### B. Analysis.

Appellant contends the respective $280 fines constitute ex post facto punishment. He claims the trial court must have intended to impose the minimum fines when it ordered an amount that reflected the minimum fines in place at the time of sentencing. He further argues his counsel rendered constitutionally ineffective assistance if this claim is deemed waived on appeal.

The ex post facto clause applies to the imposition of restitution fines, which represents punishment. (*People v. Souza* (2012) 54 Cal.4th 90, 143.) A restitution fine is to be imposed under the law applicable at the time of the offense and not at the time of

29.

sentencing. (*Ibid.*) A fine that was properly imposed under the law at sentencing but improper under the law at the time of the offense violates ex post facto principles. (*Id.* at pp. 143-144.)

When a sentence includes a period of parole, the court must impose a parole revocation restitution fine that equals the same amount that is imposed for the restitution fine under subdivision (b) of section 1202.4. (§ 1202.45, subd. (a).) Effective January 1, 2013, the Legislature increased the minimum restitution fine in section 1202.4, subdivision (b)(1), to $280. (Stats. 2012, ch. 873, § 1.5, pp. 7236-7237.) In 2012, when appellant committed these crimes, this minimum fine was $240. (Former § 1202.4, subd. (b)(1).) However, for crimes committed in 2012, the trial court had the discretion to impose a fine between $240 and $10,000 under former section 1202.4. (*Ibid.*)

Here, the $280 fines imposed were proper under the law at the time appellant committed these offenses. Appellant does not challenge or contend that the trial court abused its discretion regarding the amount of these fines. Because these fine amounts were permissible in 2012, appellant has not established an ex post facto violation of his rights.[6]

---

[6] Because no ex post facto violation occurred, we will not address appellant's argument that his counsel rendered ineffective assistance in failing to raise an ex post facto objection in the trial court. (*People v. Torrez* (1995) 31 Cal.App.4th 1084, 1091 [defense counsel is not required to make futile motions or meritless objections to appear competent].)

## **DISPOSITION**

The judgment is affirmed.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
POOCHIGIAN, J.


_____
SMITH, J.